IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>JOSE L. GARCIA- MORALES,<br><br>    Debtor. | Case No. 21-14949 KHT<br>Chapter 7 |

**ORDER ON TRUSTEE'S MOTION FOR TURNOVER**

THIS MATTER comes before the Court on the *Trustee's Motion to Compel Turnover* (the "Motion," docket #37), filed by Robertson B. Cohen, Chapter 7 Trustee ("Trustee"), the Response thereto (docket #44), filed by Debtor Jose L. Garcia-Morales ("Debtor"), the parties' Stipulated Facts (docket #55), and the briefs filed by Debtor (docket #58) and Trustee (docket #59). The Court heard oral argument on the matter (docket #61), following which the matter was taken under advisement. The Court is now prepared to rule, and hereby finds and concludes as follows:

**I.      STIPULATED FACTS**

Debtor filed his Chapter 7 bankruptcy petition on September 28, 2021. Trustee is the duly appointed Chapter 7 trustee. Debtor and Trustee entered into a Stipulation to File Income Tax Returns and Turnover Refunds (the "Tax Stipulation," docket #18), which provided, in relevant part:

1.  The Trustee, Robertson B Cohen and the above-named Debtor(s) agree that the Debtor(s) shall file all income tax returns for the 2021 tax year with the Internal Revenue Service and the State of Colorado by no later than April 15, 2022. Copies of all such income tax returns shall be delivered to the Trustee contemporaneously with the filing of the same with the appropriate taxing authorities.

2.  By their signatures on this Stipulation, the Debtor(s) authorize the Internal Revenue Serve and the Colorado Department of Revenue to send the Debtor(s) tax refund checks for the taxable year(s) set forth above directly to the Trustee. In the event the refund checks are sent to the Debtor(s), the Debtor(s) shall, within three (3) days after such refund is received, endorse the refund check as follows: "Pay to the order of Robertson B Cohen, Trustee," and deliver such check to the Trustee.

3.  Upon receipt of any refund check(s), the Trustee will deposit the same in an estate bank account. After deducting the exempt portion of any refund, the non-exempt portion of the refund for the applicable year will be prorated as follows: The non-exempt amount of the

> refund will be divided by the number of days in the tax year for which the refund is due. The quotient will then be multiplied by the number of days in that year preceding the date of the filing of the petition to determine the estate's interest in the refund; provided, however, that the Trustee may also apply the non-exempt portion of the refund exceeding the estate's prorated share to satisfy any other non-exempt property. Otherwise, the non-exempt amount of the tax refund which is not retained for the benefit of the creditors of the estate will be returned to the Debtor(s). The exempt portion of the refund shall be refunded to the Debtor(s).

Tax Stipulation at 1. The Court approved the Tax Stipulation (docket #19).

In February 2022, Debtor and his Non-Filing Spouse filed their 2021 Colorado and federal income tax returns, reflecting the following amounts:

Federal Tax Return:

| Total Wages | $99,147 |
| Total Taxable Income | $74,047 |
| Total Tax Due | $8,485 |
| Total Federal Income Tax Withheld | $8,140 |
| Refundable Child Tax Credit | $1,800 |
| Total Payments | $9,940 |
| Total Federal Refund | $1,455 |

Colorado State Tax Return:

| Total Federal Taxable Income | $74,047 |
| Total Net Colorado Tax Owed | $3,332 |
| Total Colorado Income Tax Withheld | $3,774 |
| Sales Tax Refund | $112 |
| Total State Refund | $554 |

Pursuant to the Tax Stipulation, the total federal refund for 2021 of $1,455 was paid directly to Trustee. Trustee holds the $1,455 attributable to the 2021 federal tax refund, pending the outcome of this dispute. The State of Colorado paid the $544 attributable to the 2021 Colorado tax refund to Debtor.

## II.   APPLICABLE LAW

A tax refund comes from tax "payments," including refundable credits and other payments such as wage withholdings. *See In re Borgman*, 698 F.3d 1255, 1261 (10th Cir. 2012) (discussing "payments" as defined by the IRS). When a debtor's total tax payments are higher than his tax liability, he will receive a refund of the "overpayment." *Id.* The refund is property of the estate, to the extent attributable to the pre-petition portion of the taxable year in question. *In re Barowsky*, 946 F.2d 1516, 1519 (10th Cir. 1991),

*cited in Borgman*, 698 F.3d at 1262.[1] The refunds at issue here are entirely attributable to pre-petition periods and are therefore property of Debtor's bankruptcy estate.

To the extent an exemption applies, a debtor may remove exempt property from his estate. On Debtor's petition date, Colorado law provided an exemption for "[t]he full amount of any federal or state income tax refund attributed to an earned income tax credit or a child tax credit." Colo. Rev. Stat. § 13-54-102(1)(o) (2021). The refundable credit Debtor received here, the Child Tax Credit, falls within this exemption.

After Debtor's petition date, Colorado added a tracing provision to the exemption statute:

> To the extent that exempt assets are commingled with nonexempt assets, a first-in first-out accounting shall be used to determine the portion of the commingled assets to which the exemption applies. If exempt assets are commingled with nonexempt assets as part of a single transaction, any amounts withdrawn from an account for the purpose of such transaction shall be assessed on a pro rata basis. This subsection (6) applies to all provisions of the Colorado Revised Statutes concerning the exemption of assets from seizure, except for exemptions that require segregation.

Colo. Rev. Stat. § 13-54-102. Colorado did not amend the language of § 13-54-102(1)(o).

## III. PARTIES' ARGUMENTS

Trustee argues the Court should treat all tax "payments" (refundable credits and wage withholdings) as commingled property (exempt property[2] mixed with non-exempt property) and apply tracing rules, the most logical of which would be the pro-rata method. In a hypothetical example, if a debtor has a tax liability of $1,000, withholdings of $1,000, and a refundable tax credit of $1,000, he has total tax payments of $2,000 and overpayments of $1,000, and he would receive a refund of $1,000. Under Trustee's argument, the withholdings and the refundable tax credit each accounted for 50% of the total payments, so only 50% of the hypothetical debtor's refund would be exempt.

Debtor argues the Court should construe the exemption statute liberally in a way that maximizes the exemption available to debtors. In the above hypothetical, under

---

[1] In contrast, non-refundable credits (which are not considered "payments," *see Borgman*, 698 F.3d at 1261) are not property of a debtor's bankruptcy estate. *In re Landgrebe*, No. 08-26271 EEB, 2009 WL 3253933 (Bankr. D. Colo. Sept. 23, 2009). Exemptions may not be claimed on property that is not property of the bankruptcy estate. *Id.,* (citing *Owen v. Owen*, 500 U.S. 305, 308 (1991) (finding "[n]o property can be exempted (and thereby immunized), however, unless it first falls within the bankruptcy estate."); *Carbaugh v. Carbaugh (In re Carbaugh)*, 278 B.R. 512, 520-21 (10th Cir. BAP 2002) ("Exemptions may only be claimed on property that is property of the bankruptcy estate.")). *See also Borgman*, 698 F.3d at 1262 (non-refundable credits are not eligible for exemption).

[2] The Court refers to refundable credits as exempt because the refundable credit at issue here falls within the exemption statute. The Court does not hold all refundable credits are exempt; only refundable credits included in the exemption statute are exempt.

3

Debtor's argument, if the debtor had a refundable tax credit of $1,000 and a refund of $1,000, the entire refund would be exempt.

## IV.   DISCUSSION

Trustee argues this case presents a tracing issue.  He seeks to apply commingling rules and tracing methods to a debtor's right to receive a refund, before the taxing authority issues the refund.  But, before a refund is issued, a debtor has no ownership interest in a taxing authority's funds.  In the absence of an ownership interest in funds or an obligation to segregate funds, such as that applicable to funds held in trust, commingling rules or tracing methods are inappropriate:

> When property of the estate is alleged to be held in trust, the burden rests upon the claimant to establish the original trust relationship.  The claimant must prove title and identify the trust fund or property and, where the fund or property has been mingled with the general property of the debtor, the claimant must sufficiently trace the property. However, if it cannot first be shown that a trust has been created, there is no necessity for inquiry as to whether the property can be identified or traced.  Additionally, where the recipient of the funds can by agreement use them as the recipient's own and commingle them with the recipient's own monies, a debtor-creditor relationship exists, not a trust.   5 *Collier* ¶ 541.11, at 541-59 (footnotes deleted).

*In re Bangor & Aroostook R.R. Co.*, 320 B.R. 226, 231-32 (Bankr. D. Me. 2005*), aff'd*, No. 01-11565, 2007 WL 607867 (D. Me. Feb. 23, 2007).

A taxing authority is under no obligation to segregate funds received from or owed to any particular taxpayer, and funds it receives are commingled with other funds.  *See, e.g., United States v. Menotte (In re Custom Contractors, LLC)*, 484 B.R. 835, 845 (S.D. Fla. 2012) (affirming bankruptcy court, which found "the IRS immediately deposits tax payments into the Treasury for general use by the Government" and "the payments are commingled with other funds and are not segregated into separate accounts according to their origin."), *aff'd*, 745 F.3d 1342 (11th Cir. 2014).  A taxpayer entitled to a refund has a debtor-creditor relationship with the taxing authority.  With a debtor-creditor relationship, pre-payment identification or tracing does not apply.

The Court cannot apply tracing rules to a tax refund until the refund is issued.  If a taxpayer receives a refund and deposits it into an account in which other funds are deposited and funds are withdrawn, he may have commingled the refund with his other funds, but in the absence of that or similar action on the taxpayer's part, the funds are not considered commingled.  Here, Debtor did not receive the federal refund, which was paid directly to Trustee.  The refund cannot be considered commingled.[3]  This case does not

---

[3] The Court assumes, without deciding, the Colorado state tax refund was commingled with Debtor's other funds.  But, there is still no need to applying tracing rules.  Any turnover obligation Debtor may have would extend to the property or its value.  11 U.S.C. § 542(a); *In re Ruiz*, 455 B.R. 745, 751 (10th Cir. BAP 2011).  To the extent Debtor has a turnover obligation with respect to the state tax refund, he would not need to

present a tracing issue. Instead, this case presents an apportionment issue: what part of the tax payments should be apportioned to the payment of tax obligations?

Trustee argues for application of a pro-rata method, so a debtor's tax obligation is considered paid by all tax payments (wage withholdings, which are not exempt, and refundable credits, which are exempt), based on the proportion each type of payment bears to the payment total. In the above hypothetical, if a debtor has a tax liability of $1,000, withholdings of $1,000, and a refundable tax credit of $1,000, Trustee would apportion $500 of the tax liability to the non-exempt wage withholdings and $500 of the tax liability to the otherwise-exempt refundable credit.

The Court cannot accept Trustee's argument. Property subject to an exemption should not be burdened with a tax liability. As another bankruptcy court within this circuit explained:

> [T]here are no cases that directly address the trustee's argument that when the debtors owe tax to which the EIC [Earned Income Credit, a refundable credit] would be applied, the portion of the debtors' refund that can be attributed to the credit should be reduced to force the pro rata application of a portion of the credit to the tax paid. The trustee's view is that permitting the debtors to retain all of their EIC when, in fact, some portion of the taxes they pay should be attributed to it effectively places the burden of paying the debtors' taxes on the creditors by diminishing the estate.
>
> . . .
>
> But in *In re Westby,* [473 B.R. 392 (Bankr. D. Kan. 2012), *aff'd*, 486 B.R. 509 (10th Cir. BAP 2013),] Judge Karlin refused to permit an allocation of the EIC into pre- and postpetition portions. She correctly held that the *Barowsky* [946 F.2d 1516, 1519 (10th Cir. 1991)] proration [of a tax refund into pre-petition and post-petition periods] did not apply to the EIC because the EIC is exempt, noting that "[Kan. Stat. Ann. § 60-2315] explicitly exempts the 'maximum credit' for 'one tax year.' Therefore, a pro rata division would not be appropriate, because [Kan. Stat. Ann. § 60-2315] exempts the property from the estate entirely." That reasoning disposes of the point here, too. Because the entire EIC is exempt, it should not be burdened with paying the debtor's tax bill. This conclusion is buttressed by the long-held Kansas view that exemptions are to be liberally construed in favor of the debtor.
>
> Another facet of Kansas exemption law also undercuts the trustee's argument. The Kansas Supreme Court has historically rejected creditors' efforts to marshal a debtor's assets in a way that would invade their homestead exemption, instead holding that nonexempt assets must first be liquidated to pay lienholders' and general creditors' debts. [citing and discussing *Colby v. Crocker*, 17 Kan. 527 (1877)]. . . .

---

trace or turn over the specific funds received. Whether Debtor in fact has any turnover obligation is discussed below.

5

> In *Meyer v. United States*, [375 U.S. 233, 239-240 (1963),] the Supreme Court held that where New York had enacted an exemption for the proceeds of life insurance, and where its courts refused to marshal assets to diminish those rights, requiring the I.R.S. to first enforce its tax lien on the death benefits to the prejudice of the survivor beneficiaries would undermine that benevolent policy of the exemption. The same rule should apply in this case. Forcing the proration the trustee seeks effectively calls upon the [debtors] to apply their exempt asset, the EIC portion of the refund, to the payment of a debt on par with their nonexempt assets. Under the rule in *Meyer*, and, by analogy, the rule in *Colby v. Crocker*, the trustee should not be permitted to marshal the debtor's exempt assets by requiring the EIC portion of the refund to bear some part of their tax obligation.

*In re Roy*, No. 12-11246, 2013 Bankr. LEXIS 5710, at **8-16 (Bankr. D. Kan. Sep. 24, 2013).

Trustee distinguishes *Roy*, noting Colorado and Kansas exemption statutes have different language. *Compare* Kan. Stat. Ann. § 60-2315 (providing an exemption for "**the debtor's right to receive** [certain refundable] tax credits") *with* Colo. Rev. Stat. § 13-54-102(1)(o) (providing an exemption for "**[t]he full amount of any . . . refund attributed to** [certain refundable credits]" (emphasis added)). To be sure, the Kansas exemption statute does not contain the phrase "attributed to." But, the Court cannot find that phrase compels the result Trustee is seeking.

To "attribute" is "to explain as caused or brought about by[;] [to] regard as occurring in consequence of or on account of." *Webster's Third New International Dictionary* 142 (1976).[4] Causation is a well-established legal concept, recently discussed by the Supreme Court:

> [A]s this Court has previously explained, "the ordinary meaning of 'because of' is 'by reason of' or 'on account of.'" [Citations omitted.] In the language of law, this means that [the statute's] "because of" test incorporates the "'simple'" and "traditional" standard of but-for causation. [Citation omitted.] That form of causation is established whenever a particular outcome would not have happened "but for" the purported cause. [Citation omitted.] In other words, a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause.
>
> This can be a sweeping standard. Often, events have multiple but-for causes. So, for example, if a car accident occurred *both* because the defendant ran a red light *and* because the plaintiff failed to signal his turn at the intersection, we might call each a but-for cause of the collision. [Citation omitted.] When it comes to Title VII, the adoption of the traditional but-for

---

[4] *Quoted in In re Dunckley*, 452 B.R. 241, 243-44 (10th Cir. BAP 2011), *rev'd sub nom. In re Borgman*, 698 F.3d 1255 (10th Cir. 2012). Although *Borgman* reversed *Dunckley*, *Borgman* did not reverse *Webster's* or otherwise disagree with the definition of the verb attribute.

6

> causation standard means a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision. So long as the plaintiff's sex was one but-for cause of that decision, that is enough to trigger the law. [Citations omitted.]
>
> No doubt, Congress could have taken a more parsimonious approach. As it has in other statutes, it could have added "solely" to indicate that actions taken "because of" the confluence of multiple factors do not violate the law. *Cf.* 11 U.S.C. § 525; 16 U.S.C. § 511. Or it could have written "primarily because of" to indicate that the prohibited factor had to be the main cause of the defendant's challenged employment decision. *Cf.* 22 U.S.C. § 2688. But none of this is the law we have. . . .

(Emphasis in the original.) *Bostock v. Clayton Cnty., Georgia*, -- U.S. --, 140 S. Ct. 1731, 1739-40 (2020) (citations omitted).

Turning to the language of the Colorado exemption statute, the phrase "attributed to" should similarly be interpreted according to its ordinary meaning, requiring the "'simple' and 'traditional' standard of but-for causation." If the refundable credit were removed from the tax equation, would the refund amount be different? If so, we have identified a but-for cause. Here, removing the refundable credit would eliminate Debtor's federal refund. The refundable credit is a but-for cause of Debtor's refund, and the causation requirement of the exemption statute is satisfied. The refund is attributed to the refundable credit.

As the Supreme Court noted, often events have multiple but-for causes. A tax refund may be caused or brought about by many factors, including "the amount of income earned, the amount of deductions claimed, the amount of credits available, and the amount of taxes already paid in withholding, among other variables." *Borgman*, 698 F.3d at 1261. To the extent a taxpayer receives a refundable credit and receives a refund, the refundable credit helped cause or bring about the refund. So did the income earned, refundable and nonrefundable credits available, and withholding paid. In *Borgman*, the court held: "A taxpayer's refund, if any, is no more 'attributed to' the nonrefundable portion of the CTC than it is to any of these other elements of the equation." *Id.* The Court would add a taxpayer's refund is also no less attributed to the nonrefundable credit than it is to any of the other elements of the equation. Each element may be a but-for cause of the refund. The existence of multiple but-for causes does not prevent the Court from finding the but-for causation requirement satisfied as to the refundable credit.

Colorado exempts "[t]he **full amount** of any . . . refund." C.R.S. § 13-54-102(1)(o) (emphasis added.) Trustee's argument reducing the exemption by apportioning a percentage of tax liability ignores the plain meaning of the word "full." Giving effect to the term "full" requires a determination a debtor's tax refund is exempt up to the amount of the exempt refundable credit received. If a debtor has a tax liability of $1,000, withholdings of $1,000, and an exempt refundable tax credit of $1,000, he would receive a refund of $1,000, and the full $1,000 amount of the refund would be exempt.[5]

---

[5] Of course, the exemption cannot exceed the amount of the exempt refundable credit. If a taxpayer has a tax liability of $1,000, withholdings of $1,500, an exempt refundable credit of $1,000, and a refund of $1,500,

7

Ordinarily, when the language of a statute is plain, the Court's inquiry into its meaning ends. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989). But, out of an abundance of caution, the Court will address additional case law below.

Colorado courts and federal courts applying Colorado law have long held Colorado exemptions must be liberally construed. *See, e.g., Sandburg v. Borstadt*, 109 P. 419, 421 (Colo. 1910), *cited in In re Hellman*, 474 F.Supp. 348, 350 (D. Colo. 1979). A liberal construction of exemption statutes requires creditors to look to sources other than exempt property to satisfy general creditors' debts. *See Roy*, 2013 Bankr. LEXIS 5710, at \*\*12 (citing *Meyer v. United States*, 375 U.S. 233, 239-240 (1963) (applying NY law); *Colby v. Crocker*, 17 Kan. 527, 532 (1877)); *see also In re Chadwick*, 114 B.R. 663, 664-65 (Bankr. W.D. Mo. 1990); *Gibson v. Farmers & Merchants Bank*, 81 B.R. 84, 87 (N.D. Fla. 1986); *In re Mills*, 40 B.R. 72, 75 (Bankr. E.D.N.C. 1984); *Westinghouse Credit Corp. v. Central Trust Co. (In re Leonardo)*, 11 B.R. 453, 455 (Bankr. W.D.N.Y. 1981); *Bank of Luverne v. Turk*, 133 So. 52, 55 (Ala. 1930); *Sims v. McFadden*, 233 S.W.2d 375, 377 (Ark. 1950). Colorado is no exception. As a bankruptcy court applying Colorado law held:

> It is true that 11 U.S.C. § 541 places all the debtor's property in the estate, but § 522(b) requires the trustee to accede to the debtor's claim of exemption notwithstanding § 541.
>
> . . . .
>
> Under the doctrine of marshaling, [the secured creditor] will be required to satisfy its lien first from the non-exempt items covered by its security interest. Marshaling in this manner will further the "fresh start" policy of the Bankruptcy Code and also the state and federal policies of liberally construing homestead and exemption laws.

*Genova v. Chavez (In re Chavez)*, 26 B.R. 129, 130-31 (Bankr. D. Colo. 1983).

*Borgman* does not compel a different result. *Borgman* criticized a hypothetical debtor who sought to claim an exemption in a refund caused by excessive withholding, "'which would have been other assets of the bankruptcy estate if the excessive withholdings had not been made.'" 698 F.3d at 1262 (quoting *Barowsky*, 946 F.2d at 1518). Here, the Court does not permit the exemption of excess withholding; the Court permits the application of appropriate withholding. In this Court's hypothetical example, a debtor who has a tax liability of $1,000 and withholdings of $1,000 has not over-withheld. His tax liability is appropriately satisfied by withholdings from his non-exempt wages. To the extent a debtor over-withholds, the excess withholdings refunded to the debtor are appropriately included in property of the estate. For example, a debtor with a $1,000 tax liability, $1,500 in withholdings, and a $1,000 refundable credit will receive a refund of $1,500, of which $1,000 (the refundable credit) is exempt and $500 (the excess withholding) is non-exempt. A debtor who under-withholds will receive a reduced refund, but that does not provide a justification for further reducing the exempt amount. A debtor

---

only $1,000 of the refund would be exempt.

8

with a $1,000 tax liability, $500 in withholdings, and a $1,000 refundable credit will receive a refund of $500, effectively waiving the exemption as to the amount of the credit applied to his tax liability. But, any such "waiver" should not extend further to that debtor's general unsecured creditors.

Finally, as to the argument creditors are harmed if a debtor's tax liability is allocated to his withholdings first, to preserve an exemption in a refundable credit, the Court agrees with *Roy*:

> [T]he trustee argues that it is unfair for the debtors to retain their entire EIC while the unsecured creditors' share has already been diminished by the taxing authority's deducting the tax owed from the refund. This is no more "unfair" than the priority scheme of the Bankruptcy Code is. Income tax claims are typically paid before the claims of unsecured creditors under § 507(a)(8). So even if the debtors somehow managed to file their return but avoid application of their overpayment to their taxes, the taxing authority would have a priority claim that would be paid before any distribution to the unsecured creditors.

2013 Bankr. LEXIS 5710, at **15-16.

## V.    CONCLUSION

In this case, Debtor's federal tax liability was $8,485, his withholdings were $8,140, and his exempt refundable credit was $1,800. For the reasons discussed above, he is entitled to claim an exemption of the full amount of his $1,455 federal refund. He is not entitled to claim an exemption in the Colorado state refund of $554, which does not appear to be attributed to an earned income tax credit or a child tax credit.

The Court has not decided the issue of whether or how the tax obligations or refunds should be apportioned between Debtor and his non-filing spouse, which issue was not presented to the Court on stipulated facts.

Accordingly,

IT IS HEREBY ORDERED that the Motion is DENIED.

Dated August 11, 2023                    BY THE COURT:

                                         */s/ Kimberley H. Tyson*
                                         Kimberley H. Tyson
                                         United States Bankruptcy Judge